PULFER, Appellee,

v.

PULFER, Appellant.

[Cite as *Pulfer v. Pulfer* (1996), 110 Ohio App.3d 90.]

Court of Appeals of Ohio,
Third District, Allen County.

No. CA 95 07 0045.

Decided March 28, 1996.

*David Evans,* for appellee.

*Clayton Osting,* for appellant.

GLASSER, Judge.

This case is an appeal from a judgment of the Allen County Court of Common Pleas. Appellant, James E. Pulfer, is appealing the trial court's finding that it was in the best interest of the minor child, Donna Pulfer, Jr., to permit appellee Donna J. Pulfer to move from Delphos to Lima, Ohio. For the reasons discussed below, we affirm the decision of the trial court.

The facts of this case are as follows. Appellee and appellant are the parents of the minor child. Following their divorce, the Pulfers entered into a shared parenting agreement concerning the child, on November 3, 1994. The agreement provided that their daughter would reside with her mother. Further, the agreement also provided that neither party "shall move more than five miles outside the city of Delphos or outside the state of Ohio without the prior written approval of the Allen County Court of Common Pleas or approval pursuant to arbitration." The shared parenting agreement also provided for arbitration as follows:

"[B]efore resorting to any court action to resolve disputes as to their respective rights and responsibilities under this agreement, [the parties] shall seek arbitration pursuant to O.R.C. [Chapter] 2711 in an effort to resolve any disputes that they are unable to resolve between themselves without the aid of a third party."

On January 11, 1995, appellee filed a notice of intent to relocate with the Allen County Court of Common Pleas. On January 18, 1995, appellee moved from Delphos to Lima with the child. On that same date, appellant filed objections to appellee's intention to relocate. Subsequently, the matter was set for a hearing before a referee. At the hearing, appellant requested that the matter be referred to arbitration pursuant to the terms of the shared parenting agreement. The referee refused and evidence was taken as to whether appellee's move was in the best interest of the child.

On April 14, 1995, the referee issued a report and recommendation finding that appellee's relocation from Delphos to Lima was in the best interest of her daughter. On May 1, 1995, appellant filed objections to the referee's report, on the ground that the matter should have been referred to arbitration. On June 30, 1995, the trial court held that appellant's objections to the referee's report were untimely filed, and therefore, would not be considered. The trial court also issued an order adopting the referee's report and recommendations finding that appellee's move was in the best interest of the child.

It is from this judgment that appellant raises the following two assignments of error:

"Assignment of Error I

"The court erred in denying the defendant the opportunity to have his Objections to the Report of the Referee determined on the merits. Further, the court abused its discretion in not granting the defendant's Motion to Vacate or issue Alternative Order based on all the surrounding facts and circumstances.

"Assignment of Error II

"The trial court erred in denying the defendant's numerous motions for stays and in not referring the issues before the court to an arbitrator."

As his first assignment of error, appellant argues that the trial court erred in finding that, because his objections were filed seventeen days after the referee's report was filed, they were untimely. Former Civ.R. 53(E)(2) [1] provided that a party may file objections to a referee's report "within fourteen days of the filing of the report." However, appellant argues that Civ.R. 6(E) automatically added three days to the fourteen-day response time.

■ Civ.R. 6(E), known as the "three-day mail rule," provides for an additional three days response time as follows: "Whenever a party has the right or is required to do some act or take proceedings within a prescribed period after the service of a notice or other paper upon him and the notice or paper is served upon him by mail, three days shall be added to the prescribed period." However, we do not find that the three-day mail rule extends the time within which a party may file objections to a referee's report. Civ.R. 53(E)(2) gives the party the right to object to a referee's report "within fourteen days of the *filing* of the report." (Emphasis added.) Because Civ.R. 53(E)(2) provides for the fourteen days to begin to run on the date the report is filed, we find that Civ.R. 6(E) is not applicable. *Hucke v. Hucke* (Aug. 31, 1990), Montgomery App. No. 11882,

---

1. Effective July 1, 1995, the fourteen-day limit for filing objections is now provided for under Civ.R. 53(E)(3)(a).

unreported, 1990 WL 125700. Therefore, appellant's objections to the referee's report were untimely filed pursuant to former Civ.R. 53(E)(2).

Appellee argues that because appellant's objections were untimely, he is prevented from assigning them as error on appeal. However, untimely filed objections do not prevent this court from reviewing a trial court's adoption of a referee's conclusions of law under former [2] Civ.R. 53. On appeal, former Civ.R. 53(E)(6) does not require written objections in order for an appellate court to review issues of law decided by a referee. Former Civ.R. 53(E)(6) only prohibits an assignment of error as to a "trial court's adoption of a referee's *finding of fact* unless an objection to that finding is contained in that party's written objections to the referee's report." (Emphasis added.) Appellant argues that the hearing before the referee was improper on the ground that the matter should have been referred to arbitration. This objection raises a question of law and shall be considered by this court. Accordingly, the first assignment of error is found not well taken.

As the second assignment of error, appellant argues that, pursuant to the terms of a shared parenting agreement, the issue of appellee's relocation should have been submitted to arbitration.

The shared parenting agreement provides for the parties to submit their disputes to arbitration as follows:

"In an effort to maintain the Plan and Agreement of Shared Parenting for the benefit and best interests of their minor child(ren), the parties agree that before resorting to any court action to resolve disputes as to their respective rights and responsibilities under this agreement, *they shall seek arbitration pursuant to ORC [Chapter] 2711 in an effort to resolve any disputes that they are unable to resolve between themselves without the aid of a third party.*" (Emphasis added.)

Although the shared parenting agreement provides for arbitration of disputes including a parent's relocation, certain issues are not arbitrable as a matter of law. A dispute over a parent's relocation is part of the larger issue of the custody of a minor child. Therefore, this court must next determine whether matters of child custody can be made the subject of arbitration.

In *Kelm v. Kelm* (1993), 68 Ohio St.3d 26, 623 N.E.2d 39, paragraph one of the syllabus, the Supreme Court of Ohio held that "matters of temporary or permanent spousal and/or child *support* may, by mutual consent of the marriage partners, be made subject to an agreement to arbitrate." (Emphasis added.)

---

2. Effective July 1, 1995, Civ.R. 53(E)(3)(b) provides in part as follows: "A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule."

The *Kelm* court quoted the seminal case of *Faherty v. Faherty* (1984), 97 N.J. 99, 108–109, 477 A.2d 1257, 1262–1263, as follows: " 'We do not agree with those who fear that by allowing parents to agree to arbitrate child *support,* we are interfering with the judicial protection of the best interests of the child.' " (Emphasis added.) *Kelm,* 68 Ohio St.3d at 30, 623 N.E.2d at 420. However, the *Kelm* court did not address the issue of whether child *custody,* as opposed to child *support,* may be subject to arbitration. This court's review of Ohio case law shows that no court has addressed the issue whether arbitration of child custody is lawful. Thus, this is a case of first impression.

In determining whether matters of child custody are arbitrable, we must keep in mind that under the doctrine of *parens patriae* courts have a duty to protect the best interests of children. Courts outside Ohio have held that, in matters of child support, arbitration does not destroy the court's traditional role as *parens patriae.* See *Masters v. Masters* (1986), 201 Conn. 50, 67, 513 A.2d 104, 112 (listing courts outside Ohio that have held that child support disputes are arbitrable). However, states outside Ohio have been less comfortable with the notion of arbitrating matters of child custody. *Id.* In *Nestel v. Nestel* (1972), 38 A.D.2d 942, 943, 331 N.Y.S.2d 241, 243, the court held that matters involving child custody may not be referred to arbitration. The *Nestel* court held that child custody, as opposed to child support, involved "the delicate balancing of the factors composing the best interests of a child," a determination that could only be made by a trial court. *Id.* Further, because "determinations of custody go to the very core of the child's welfare and best interests" most states prohibit arbitration of child custody disputes. *Masters,* 201 Conn. at 67, 513 A.2d at 113.

This court is also concerned about the limited judicial review of arbitration awards if child custody issues are deemed arbitrable. In *Nester v. Nester* (May 23, 1995), Franklin App. Nos. 94APF09–1359 and 94APF09–1360, unreported, 1995 WL 318737, the court summarized the limited scope of review allowed a trial court in reviewing an arbitrator's decision as follows:

"When parties agree to submit their dispute to binding arbitration, they agree to accept the result regardless of its legal or factual accuracy. Binding arbitration precludes judicial review unless the arbitrator was corrupt or committed gross procedural improprieties. In addressing a R.C. 2711.10 motion to vacate, a reviewing court is precluded from inquiry into the validity of the legal and/or factual determinations of the arbitrator unless there is a clear showing of fraud, corruption, misconduct and/or excessive or imperfectly executed authority.

"Appellate review of arbitration proceedings is further confined to an evaluation of the order issued by the court of common pleas pursuant to R.C. Chapter 2711.

"In addressing a R.C. 2711.11 motion to modify or correct, the substantive merits of the original arbitration award are not reviewable on appeal, absent evidence of material mistake or extensive impropriety." (Citations omitted.)

The *Kelm* court held that, although trial courts have a limited scope of review, trial courts do have the authority to use their contempt powers to ensure that arbitration of child *support* issues is accomplished in an "expeditious, efficient, and reasonable manner." *Kelm*, 68 Ohio St.3d at 30, 623 N.E.2d at 42. However, given the complex nature of matters of child *custody*, we do not find that a court could sufficiently protect the best interests of the child through its contempt powers. Therefore, we hold that matters of child custody may only be decided by the trial court and are not subject to arbitration despite any agreement entered into by the parties. Accordingly, the second assignment of error is found not well taken.

Upon consideration whereof, the judgment of the Allen County Court of Common Pleas is affirmed. This case is remanded to that court for further proceedings consistent with this decision. It is ordered that appellant pay the costs of this appeal as provided for under App.R. 24.

*Judgment affirmed.*

MELVIN L. RESNICK, P.J., and ABOOD, J., concur.

GLASSER, ABOOD and MELVIN L. RESNICK, JJ., of the Sixth Appellate District, sitting by assignment.